IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR A CRIMINAL COMPLAINT AND AN ARREST WARRANT FOR DAVID DANIEL | Case No. 3:24-mj-00302<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Chase Bannister, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2018. As such, I am a Federal Law Enforcement Officer of the United States. I am currently assigned to the Violent Crimes Against Children Program and am designated to investigate federal crimes against children, including international parental kidnapping, child abductions, sexual exploitation of children, domestic trafficking and prostitution of children, child sex tourism, and national sex offender registry violations, for the Charlotte, North Carolina, Division of the FBI. As part of my duties, I investigate violations of 18 U.S.C. §§ 2423, 2251, 2252, and 2252A which criminalize, among other things, the production, advertisement, possession, receipt, accessing with intent to view and transportation of child pornography.

2. This investigation concerns alleged violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), and 18 U.S.C. § 2251(a) (sexual exploitation of a minor) related to the sexual assault of a minor and the trafficking of child pornography, that have been committed by David Paul DANIEL (the "Subject" or "DANIEL").

3. Your Affiant submits that there is probable cause to believe that on or about November 19, 2016, in the Western District of North Carolina and elsewhere, Defendant DAVID DANIEL employed, used, persuaded, induced, enticed, and coerced a minor to engage in any sexually explicit conduct for the purpose of producing such visual depiction of such conduct, and that visual depiction was produced and transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and if such visual depiction has actually been transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, in violation of Title 18, United States Code, Section 2251(a).

4. Your affiant also submits that there is probable cause to believe that on or about November 30, 2023, in the Western District of North Carolina and elsewhere, Defendant DAVID DANIEL knowingly possessed, and accessed with intent to view, any material that contained an image of child pornography, as defined in Title 18, United States Code, Section 2256(8), that involved a prepubescent minor and a minor who had not attained 12 years of age, and that has been mailed, and shipped and transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that have been mailed, and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252(a)(5)(B).

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Criminal Complaint and Arrest Warrant and does not set forth all my knowledge about this matter.

## Background on Computers and Child Sexual Exploitation

6. Based on training and my law enforcement experience, your Affiant is aware that computer systems can be used to commit a number of different crimes, including crimes involving child sexual exploitation. Your Affiant knows that computer hardware, peripheral units, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data).

7. Computer hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to, any data processing devices such as central processing units, self-contained "laptop" or "notebook" computers, internal storage devices such as fixed hard disks, floppy disk drives and diskettes, magnetic tape drives and tapes, optical storage devices, and other memory storage devices. Some computer hardware can be internal to the computer system or external. The external component hardware is often referred to as peripheral and includes, but is not limited to, input/output devices such as keyboards, printers, scanners, video display monitors, communication devices such as modems, recording equipment, and video/digital camera equipment.

8. Computer software is digital information, which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications such as word processing, graphics or spreadsheet programs, utilities, and communications programs. Computer documentation consists of written, recorded, printed, or

electronically stored material that explains or illustrates how to configure or use computer hardware, software, or other related items.

9. Computer documentation consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, software, or other related items.

10. Computer passwords and data security devices are designed to restrict access to, or hide, computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password, a string of alpha-numeric characters, usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital codes may include programming code that creates "test" or "hot" keys that perform pre-set functions when depressed. "Hot" keys can be designed to erase, or otherwise render unusable, data that was contained within computer memory storage devices.

11. Documents can be created through the use of computer software programs, and those documents can be used to facilitate the commission crimes. In some cases, the mere possession of certain types of documents constitutes criminal conduct. Computer systems also can store information in internal or peripheral storage devices including, but not limited to, fixed disks, external hard disks, floppy diskettes, tape drives, flash (stick) drives or other memory storage devices. Based on training and experience, and use of computer systems in employment as a law enforcement officer, your Affiant knows that users of computer systems often save information or created documents to storage devices.

12. Your Affiant knows from training and experience that computer systems are relatively expensive to acquire. For this reason, and the difficulty in transferring the entire contents

(programs, documents, files, software, images, etc.) of a computer system to a new computer system, your Affiant knows that computer systems are often possessed by their owners for an extended period of time. This extended ownership often means that criminal evidence contained within a computer system's storage device(s) also exists for an extended period, often beyond the actual date(s) of the criminal act.

13. It is the training and experience of your Affiant that child pornography comes from many sources. Computers have revolutionized the way in which those sources and users interact. The development of computers and the Internet has greatly changed and added to the way in which child pornography is traded, disseminated, and viewed. Computers have facilitated the ability for child pornography collectors and traders to keep their collections hidden. Photographs and videos that used to take up boxes may now be collected and saved on electronic medium in spaces as small as a postage stamp, like a digital storage device called a "Secure Digital Card." Computers now aid and serve in the production of child pornography, the distribution of child pornography, the viewing of child pornography, the storage of child pornography, and communication between child pornography traders.

14. Your Affiant knows from training and experience that those persons who produce, possess, trade, or disseminate images of minors engaged in sexually explicit conduct view children as sexual objects, and that such persons receive gratification from sexually explicit images of minors. That those persons who produce, possess, trade, or disseminate sexually explicit images of minors often have large personal "collections" of such images which are viewed by the possessor or "collector" as extremely valuable, and used for their own sexual gratification and fantasy. People go to great lengths to conceal their "collection" of sexually explicit encounters. They may have passwords to access programs or control encryption. Such protective actions

increase the likelihood that their "collection" of contraband child pornography images is retained for significant, if not indefinite periods of time because such "collections" are difficult to replace if lost.

15. Your Affiant knows from training and experience that those persons who produce, possess, trade, or disseminate sexually explicit images of children rarely, if ever, dispose of sexually explicit images of minors, and that their personal collection of such images can include all types of media such as still photographs, digital photographs, video clips, digital video clips, printouts, magazines, and videotapes. Currently, the most prevalent media used is digital media, including digital photographs and digital video clips that are stored on the possessor's computer hard drive, computer diskettes, CD ROMs, and various external computer memory storage devices.

16. Further, your Affiant knows that digital media storage devices including but not limited to "thumb drives" and other similar portable media storage devices are by their very nature designed to be small enough to carry in one's pocket or affixed to a key chain. Also, your Affiant is aware that digital cameras contain storage disks including, but not limited to, hard drives and "SD Cards" that are like "thumb drives," in that they can hold large quantities of data and come in very small sizes. Your Affiant knows that such storage devices are able to store digital images, and by their nature are extremely portable and can easily be concealed.

17. Your Affiant knows through training and experience that those persons who produce and collect sexually explicit images involving children often times use digital media such as digital still cameras and digital video recorders to capture such sexually explicit images. The digital media storage devices and digital cameras or digital video cameras can be analyzed by trained computer forensics examiners. It may be possible to recover images from these devices

that have been deleted. Your Affiant knows through training and experience that these devices can leave signatures on the pictures they take detailing the date, time, time zone, camera settings, and sometimes the GPS location where the picture was taken, the serial number (or other identifying information) of the camera, and potentially the name of the camera's owner. This information can be used to identify the originator of images, including sexually explicit images involving children.

## Probable Cause

18. On November 30, 2023, agents from the FBI's Charlotte Field Office with the assistance of the Mint Hill Police Department ("MHPD") conducted an arrest of DANIEL at his residence, ███████████, Mint Hill, NC, pursuant to a signed arrest warrant issued concurrently with a Criminal Complaint (Dist. Of Columbia Case No. 1:23-MJ-309) authorized by United States Magistrate Judge Moxila A. Upadhyaya. Once DANIEL was in custody, FBI agents initiated the execution of a search warrant (WDNC Case No. 3:23-MJ-413), signed by United States Magistrate Judge David C. Keesler, for the residence and person of DANIEL related to 18 U.S.C. §§ 111 (assaulting, resisting, or impeding certain officers); 231 (civil disorder); 1752(a)(1) (entering or remaining in restricted buildings or grounds); 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds); 1752(a)(4) (act of physical violence in a restricted building or grounds); 40 U.S.C. §§ 5104(e)(2)(D) (disorderly or disruptive conduct in the Capitol Buildings); 5104(e)(2)(F) (engaging in physical violence in the Capitol Grounds); and 5104(e)(2)(G) (parading, demonstrating, or picketing in a Capitol Building).

19. During a search of DANIEL's person, agents recovered an Apple iPhone 14 Pro Max with a black Otterbox brand case ███████████████). During the search of DANIEL's residence, agents seized the following electronic devices: Asus laptop with charger, Eluktronics

laptop with charger, iPad, iPad with a cracked screen, and Macbook Pro laptop. The items seized during the execution of the search warrant were entered into FBI Charlotte evidence custody and a request for download of the content of the digital devices was submitted to FBI Charlotte's Computer Analysis Response Team. All devices seized during the November 30, 2023, search of DANIEL and the residence ███████████ have been in the custody of the FBI since their seizure, including the iPhone 14 Pro Max and the Asus laptop.

20. During operational coordination leading up to the arrest and search of DANIEL and his residence, investigators were made aware that MHPD had an open investigation regarding the allegation of sexual assault of a minor by DANIEL ███████████ (MINOR 1) ███████████. ███████████ MINOR 1 told MHPD investigators ███████████ ███████████ between the years 2015 to 2019, DANIEL had sexually assaulted her on multiple occasions. DANIEL had also taken pictures of her while she was naked and directed her to take pictures of herself. MINOR 1 also reported that while left alone with DANIEL, he would make her shower with him. MINOR 1 disclosed that DANIEL had her perform oral sex on him ███████████.

21. ███████████, MINOR 1 completed a forensic interview at Child Advocacy Center (CAC) Pat's Place regarding the foregoing sexual assault allegations. During the interview, MINOR 1 stated DANIEL used his cellphone to photograph her while she was naked, and DANIEL inappropriately touched her vagina. DANIEL made MINOR 1 take showers with him and on at least one occasion he had her perform oral sex on him.

22. MINOR 1 said that DANIEL made her shower with him ███████████, make her massage him, scrub his back, and he took pictures of her body without her wearing any clothes. MINOR stated that she remembered that because he told her to put her towel away. MINOR 1 said

8

that she remembered not having anything on under the towel, and she heard his cellphone click about five times, taking pictures.

23. On March 10, 2021, detectives asked DANIEL if he would come to MHPD for an interview and he arrived to speak with detectives. In the interview, DANIEL denied inappropriate conduct involving the victim but could not recall if he had showered with her or not. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At the conclusion of the interview, DANIEL's cellphone was seized to preserve any evidence of child exploitation offenses that existed on the phone.

24. The iPhone seized from DANIEL on March 10, 2021, was taken into custody by MHPD. On March 11, 2021, a North Carolina Magistrate judge signed a search warrant authorizing the search and seizure of the contents of that iPhone that MHPD seized from DANIEL. MHPD delivered the cellphone to the Homeland Security Investigations ("HSI") office in Charlotte, North Carolina, on March 12, 2021, for assistance in accessing and downloading the contents of that cellphone. HSI was not able to access the cellphone until December 13, 2023. A short time later, an image of that cellphone was provided to the FBI at the Charlotte Field Office for review.

25. A federal search warrant signed by U.S. Magistrate Judge David C. Keesler on July 24, 2024 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ authorized the review of the electronic devices seized on November 30, 2023, and the image of the phone seized from DANIEL on March 10, 2021, for evidence related to violations of Title 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(a)(5)(B), 2422(b) and 922(g)(3).

26. During a review of the Asus laptop seized from the search of DANIEL's residence on November 30, 2023, investigators observed an image of a nude ▮▮▮▮▮▮▮▮ minor female,

9

further identified as MINOR 1, with her genitals exposed and holding a towel over her shoulders. The person taking the photo appears to be laying on a bed and his/her bare knee and thigh are exposed. ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ The forensic exam of the Asus laptop revealed exif data from the photo, which shows a creation date/time of: November 19, 2016. This date is consistent with statements made by MINOR 1 during the forensic interview regarding photos taken by DANIEL. ████████████████████████████████████████████████
██.

27. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████

28. The review of the Asus laptop also revealed four images of a nude prepubescent minor female, further identified as MINOR 1, standing on a towel in the bathroom. ██████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████.

29. The Asus laptop was identified as having two hard drives (S/N: S2TTJ9BC603117 and S/N: S21CNXAGC06101A). Both of which display they are a "Product of China."

30. ████████████████████████████████████████████████████
████████████████████████████████████████████████ She further identified the

10

location of the photos as being in the master bathroom and bedrooms of ▇▇▇▇▇ Mint Hill, North Carolina 28227.

31. Over the course of the investigation, investigators were made aware of an open investigation regarding an allegation of Statutory Rape committed by DANIEL ▇▇▇▇▇ (MINOR 2) being conducted by Forsyth County Sheriff's Office (FCSO). MINOR 2's mother, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ first reported the conduct to FCSO on March 18, 2023. MINOR 2's mother told FCSO that DANIEL had been involved sexually with MINOR 2 the previous summer. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ On May 2, 2023, MINOR 2 was interviewed by FCSO investigators where she told investigators DANIEL had committed sexual acts with her on multiple occasions. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

32. During a review of the Apple iPhone with a black Otterbox case recovered from DANIEL's person on November 30, 2023, images of MINOR 2 were observed. One image of MINOR 2 showed her clothed, wearing a top, pants, and a hair tie around her left wrist. Investigators observed another three images appearing to be MINOR 2 where her face is not visible; however, she is wearing the same top from the previous image with a hair tie around her wrist. In each of the three images, she is no longer wearing pants and the focal point of the images is her genitalia. In two of the images, she is touching her genitalia with her fingers. In the third image, her arm is reaching toward the screen and her genitalia is partially exposed. The recovered images of MINOR 2 described above depict a pubescent female ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

33. The iPhone 14 Pro Max taken from DANIEL's person was manufactured in China.

34. On September 11, 2024, investigators verified through North Carolina Department of Motor Vehicles records that DAVID DANIEL's address, as listed on his driver's license ▮▮▮▮▮ is ▮▮▮▮▮, Mint Hill, North Carolina 28227.

## CONCLUSION

35. Based on the foregoing, your Affiant submits that this Affidavit supports probable cause for a warrant to arrest DAVID DANIEL for having violated Title 18, United States Code, Section 2251(a), which prohibits the sexual exploitation of a minor, and Title 18, United States Code, Section 2252A(a)(5)(B), which prohibits the possession of child pornography.

*/s/ Chase Bannister*
Chase Bannister
Special Agent, FBI

**Affidavit Reviewed by Assistant United States Attorney Nick J. Miller**

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 19th day of September, 2024, at 4:19 PM

W. Carleton Metcalf
United States Magistrate Judge